### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **ALEXANDRIA SWAYZE,** ) <br> 6516 W. 65th Terrace ) <br> Overland Park, Kansas 66202, ) <br>  ) <br> Plaintiff, ) <br>  ) <br> v. ) <br>  ) <br> **COSENTINO GROUP, INC. d/b/a** ) <br> **COSENTINO'S MARKET** ) <br> (Serve: ) <br> Agent: Cosentino Service Corporation ) <br> 3901 West 83rd Street ) <br> Prairie Village, Kansas 66208) ) <br>  ) <br> Defendant. ) | Case No.: <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Alexandria Swayze states the following as her causes of action against Defendant Cosentino Group, Inc. d/b/a Cosentino's Market.

1. Plaintiff Alexandria Swayze is a female resident of Overland Park, Johnson County, Kansas.

2. Defendant Cosentino Group, Inc. d/b/a Cosentino's Market is a corporation organized under the laws of the State of Kansas with its principal place of business in Overland Park, Johnson County, Kansas.

3. Defendant Cosentino Group, Inc. d/b/a Cosentino's Market is an employer as defined and within the meaning of 42 U.S.C. § 2000e(b) of Title VII of the Civil Rights Act of 1964 as amended in 1991.

4. Plaintiff is bringing these claims pursuant to Title VII of the Civil Rights Act of 1964, as amended in 1991, 42 U.S.C. § 2000 et seq.

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

6. Venue is proper because a substantial part of the events or omissions giving rise to the claims occurred in the District of Kansas within the meaning of 28 U.S.C. § 1391(b).

7. Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) alleging that Defendant engaged in the discriminatory and/or retaliatory actions that are being raised in this lawsuit, or alternatively, the allegations in Plaintiff's lawsuit would have arisen from the investigation of Plaintiff's Charge of Discrimination.

8. A Notice of Right to Sue has been issued by the EEOC, and this action is being brought within ninety (90) days from the issuance of such Notice of Right to Sue.

9. Plaintiff has fulfilled all conditions precedent to the bringing of this claim and has duly exhausted all administrative procedures in accordance with the law prior to instituting this lawsuit.

## ALLEGATIONS COMMON TO ALL COUNTS

10. In approximately March 2012, Plaintiff began working for Defendant.

11. Initially, Plaintiff worked as a Cashier at Defendant's location in Gardner, Kansas.

12. Approximately six to eight months after her hire at Defendant's Gardner location, Plaintiff began working in Customer Service.

13. In 2014 or 2015, Defendant promoted Plaintiff to Assistant Office Manager.

14. In early 2017, Plaintiff accepted the position of Assistant Office Manager at Defendant's location on 119th Street in Overland Park, Kansas.

15. When Defendant opened a store on 160th Street in Overland Park, Kansas in July 2017, Plaintiff began working at the 160th Street store as the Assistant Office Manager.

16. In approximately January 2018, Defendant promoted Plaintiff to Office Manager.

17. In June 2021, Plaintiff relinquished her manager role and began working in the store's bakery where she became a certified cake and wedding cake decorator.

18. Plaintiff's direct supervisor in the bakery was a male Bakery Manager named Jessie Wealot (Wealot).

19. In June 2023, an eighteen-year-old male named Jonathan "John" Martinez (Martinez) began working in the bakery as a cake decorator.

20. At the time that Martinez was hired, Plaintiff was working in the bakery on Mondays, Tuesdays, and Fridays from 1:00-8:00 p.m., Wednesdays and Saturdays from 9:00-5:00 p.m., and Plaintiff was off work on Thursdays and Sundays.

21. Martinez worked in the bakery from 8:00-4:00 p.m. each day, except on Thursdays and Sundays.

22. During the entire time Plaintiff worked with Martinez in the bakery, he made inappropriate and unwelcome sexual comments/behavior, including, but not limited to:

    a. Martinez stated that he wondered if a transgender person's parts smell like fish like women's parts do.

    b. Martinez also stated that he "hooked up" with a girl and told Plaintiff and others that her "pussy always smells like fish."

    c. Martinez shared that his friend leaves his work at Hy-Vee on his lunch break to "hook up" with girls.

    d. Martinez then commented that his friend "got a really bad blow job because this girl used too much teeth."

    e. On multiple occasions Martinez would tell Plaintiff and others that he could

3

have sex forever.

f. Martinez frequently talked about working out at the gym and would describe the women he saw at the gym, including commenting on each woman's breasts, butt, or how "hot" some of the women looked.

g. Martinez also told Plaintiff that he thought Alyssia Juarez (Juarez), one of the part-time decorators in the bakery, was really "hot."

h. Martinez also told Plaintiff and others that he was in recovery from an eating disorder.

i. Martinez would then look at Plaintiff's body and comment that she could lose weight, i.e. about 20 pounds, if she would eat organic and/or workout.

j. Martinez told Plaintiff that he did not date "fat chicks."

k. Plaintiff also noticed that Martinez would stand too close and/or brush his body and/or touch some of the female employees in the bakery. As an example, Plaintiff witnessed Martinez intentionally brush his arm against Juarez's leg when he bent down to grab a bucket that was underneath the table where he was working.

25. In response Martinez's comments, Plaintiff told him that his comments were inappropriate, that she did not want to hear them, and she would also tell him not to talk about women's bodies in a sexual manner.

26. A number of the sexually inappropriate comments made by Martinez were said in the presence of Plaintiff's manager Wealot, but Plaintiff would also report what Martinez would say to Wealot.

27. Despite Plaintiff's reports to Wealot and despite Wealot hearing Martinez make these sexually inappropriate comments at work, Wealot took no action.

28. Rather, Wealot started sharing with Plaintiff the comments he heard Martinez make at work.

29. For instance, on or about July 25, 2023, Wealot told Plaintiff that Martinez said something really bad in front of Deja (a female baker), and he believed that Deja was upset by Martinez's comment.

30. When Plaintiff asked Wealot what he heard Martinez say, he said that Martinez was filling a bag of cream and said "it sounded like a pussy flapping."

31. Plaintiff told Wealot that he needed to tell Martinez to stop making these comments at work because it was making her and others in the bakery uncomfortable and unhappy.

32. Wealot replied, "Really?" Plaintiff told him yes. To Plaintiff's knowledge, he did not take any action to stop Martinez from making these comments.

33. That same day, i.e. on or about July 25, 2023, Plaintiff reported what Wealot told her about Martinez's comment about the bag of cream to the Assistant Store Manager Keith Malloy (Malloy).

34. Plaintiff also reported to Malloy the other offensive and sexual comments Martinez had been making at work and that Plaintiff wanted to remain anonymous because she was worried Martinez would retaliate against her for reporting him.

35. Plaintiff witnessed Malloy take notes about what she reported to him.

36. In response, Malloy told Plaintiff he would take care of it.

37. After Plaintiff's report to Malloy, Martinez continued to make inappropriate and unwelcome sexual comments at work.

38. After Plaintiff's report to Malloy, she also noticed that Martinez and others in the

bakery seemed upset with her.

39. Plaintiff asked Wealot about it, and he told Plaintiff that Martinez had put in his notice because someone reported him for inappropriate behavior and that Martinez knows who reported him.

40. Wealot made it clear that Martinez and he both knew Plaintiff was the one who reported Martinez and that Plaintiff was the reason Martinez was leaving.

41. Plaintiff did not believe Martinez intended to leave, as Martinez never told Plaintiff he was leaving and since he had been talking about leaving his employment with Defendants since he first started as he also worked for another grocery store.

42. The week of August 7, 2023, Plaintiff's co-workers told her that Martinez knew that she was the one who reported him.

43. That same week, Martinez started mocking Plaintiff and answering others' questions in an imitation of Plaintiff's voice.

44. Wealot witnessed Martinez mocking Plaintiff, but he did not stop Martinez's behavior towards her.

45. Martinez continued to mock Plaintiff up through the end of his employment.

46. The week of August 14, 2023, one of the female employees in the bakery named Georgia told Plaintiff that Martinez was "plotting his revenge" against Plaintiff.

47. On or about August 18, 2023, Plaintiff reported to Malloy that Martinez knew that she had reported him and that Georgia told Plaintiff that he was plotting his revenge.

48. During this conversation, Malloy told Plaintiff that he had never spoken to Martinez after her complaint and had never reported Martinez's behavior to corporate.

49. After hearing that Plaintiff's previous reports to management had all been ignored

since management failed to stop Martinez from making inappropriate and unwelcome sexual comments, Plaintiff felt she had no choice but to leave her employment with Cosentino's.

50. Plaintiff did not feel comfortable working in an environment where this kind of harassment and retaliation was ignored by management.

51. Moreover, Plaintiff felt uncomfortable working around Martinez that she could not look at him and did not want to speak with him or have any interaction with him.

52. Defendant, through its illegal discriminatory acts, made Plaintiff's conditions so difficult and/or intolerable that Plaintiff and any other reasonable person in Plaintiff's position would have felt compelled to resign.

53. Plaintiff was constructively discharged.

54. Plaintiff's last day of work was August 18, 2023.

55. As of Plaintiff's last day of work, Martinez was still working in the bakery.

56. On August 21, 2023, Plaintiff contacted corporate Human Resources and reported Martinez's unwelcome and sexual comments/behavior and management's failure to take any action to stop the conduct.

57. At the request of a female human resources employee named Tracy, Plaintiff provided her a written statement, but Plaintiff did not hear back from anyone after making her report.

## COUNT I – SEXUAL HARASSMENT IN VIOLATION OF TITLE VII

58. Plaintiff hereby incorporates by reference into Count I all allegations contained in all preceding paragraphs herein.

59. As described above and during the course of Plaintiff's employment, Defendant's representatives, acting within the scope and course of employment, subjected Plaintiff to a hostile

7

and offensive work environment based upon her sex, female, as a result of unwelcome comments and actions by Martinez, a male co-worker, which constituted a continuing pattern of unwelcome harassment, which she found and which a reasonable person would find to be offensive and which altered a term, condition or privilege of Plaintiff's employment in violation of Title VII of the Civil Rights Act of 1964, as amended in 1991, 42 U.S.C. § 2000 et seq.

60. Defendant's conduct was sufficiently severe and/or pervasive to alter the terms, conditions, or privileges of Plaintiff's employment.

61. Defendant knew or should have known about the hostile and offensive work environment, but Defendant failed to take prompt or appropriate remedial or corrective action in response to the hostile and offensive work environment.

62. Defendant failed to make good faith efforts to enforce their policies to prevent sexual harassment against their employees, including Plaintiff.

63. All actions or inactions of or by Defendant occurred by and through their agents, servants, or employees acting within the course and scope of their employment, as set forth herein.

64. As a direct and proximate result of the unlawful conduct of Defendant as set forth herein, Plaintiff has suffered damages including emotional distress, pain and suffering, past and future lost wages and benefits, a detrimental job record, career damage and diminished career potential, mental distress in the form of embarrassment, degradation, humiliation, anxiety, loss of enjoyment of life, loss of sleep, and other nonpecuniary losses. Plaintiff is also entitled to other appropriate equitable relief.

65. The conduct of Defendant was intentional, malicious, and/or outrageous and evidenced an evil motive or conscious disregard for the rights of Plaintiff and others similarly situated, entitling Plaintiff to an award of punitive damages.

66. Plaintiff is entitled to recover all her costs, expenses, expert witness fees, and attorneys' fees incurred in this matter as well as other appropriate equitable relief.

**WHEREFORE,** Plaintiff prays for judgment against Defendant for actual, compensatory, and punitive damages, all costs, expenses, expert witness fees and attorneys' fees incurred herein, appropriate equitable relief, for interest at the highest lawful rate, and for such other and further relief as the Court deems just and proper.

## COUNT II- RETALIATION IN VIOLATION OF TITLE VII

67. Plaintiff hereby incorporates by reference into Count II all allegations contained in all preceding paragraphs herein.

68. Plaintiff engaged in protected activity by, and including without limitation, reporting the sexual harassment and/or discriminatory conduct based on sex to management and/or human resources employees of Defendant.

69. As a result of and/or in retaliation for engaging in one or more protected activities described herein, Defendant retaliated against Plaintiff, by subjecting Plaintiff to additional acts of harassment and by constructively discharging Plaintiff in violation of Title VII of the Civil Rights Act of 1964, as amended in 1991, 42 U.S.C. § 2000 et seq.

70. All actions or inactions of or by Defendant occurred by and through their agents, servants, or employees acting within the course and scope of their employment, as set forth herein.

71. As a direct and proximate result of the unlawful conduct of Defendant as set forth herein, Plaintiff has suffered damages including emotional distress, pain and suffering, past and future lost wages and benefits, a detrimental job record, career damage and diminished career potential, mental distress in the form of embarrassment, degradation, humiliation, anxiety, loss of enjoyment of life, loss of sleep, and other nonpecuniary losses. Plaintiff is also entitled to other

appropriate equitable relief.

72. The conduct of Defendant was intentional, malicious, and/or outrageous and evidenced an evil motive or conscious disregard for the rights of Plaintiff and others similarly situated, entitling Plaintiff to an award of punitive damages.

73. Plaintiff is entitled to recover all her costs, expenses, expert witness fees, and attorneys' fees incurred in this matter as well as other appropriate equitable relief.

**WHEREFORE,** Plaintiff prays for judgment against Defendant for actual, compensatory, and punitive damages, all costs, expenses, expert witness fees and attorneys' fees incurred herein, appropriate equitable relief, for interest at the highest lawful rate, and for such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial on all Counts and all allegations contained herein.

## REQUEST FOR PLACE OF TRIAL

Plaintiff hereby requests that the trial of this matter take place in Kansas City, Kansas.

Respectfully submitted,

**EMPLOYEE & LABOR LAW GROUP OF KANSAS CITY, LLC**

By: /s/Kristi L. Kingston
Kristi L. Kingston, KS Bar No. 19126
12920 Metcalf Avenue, Suite 180
P.O. Box 25843
Overland Park, KS 66225
Ph: (913) 286-5200
Fax: (913) 286-5201
Email: kristi@elgkc.com

**ATTORNEY FOR PLAINTIFF**