**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **ALEXANDRIA SWAYZE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2:24-cv-02174-JWB-GEB |
| | ) | |
| **COSENTINO GROUP, INC. d/b/a COSENTINO'S MARKET** | ) | |
| | ) | |
| Defendant. | ) | |

# DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

COMES NOW Defendant, Cosentino Group, Inc. d/b/a Cosentino's Market ("Cosentino's"), by and through its attorney of record, and provides the following answers and affirmative defenses in response to the Plaintiff's Complaint ("Complaint") in this action.

1. Plaintiff Alexandria Swayze is a female resident of Overland Park, Johnson County, Kansas.

**ANSWER: Cosentino's denies the allegations in Paragraph 1 of the Complaint for lack of information or knowledge.**

2. Defendant Cosentino Group, Inc. d/b/a Cosentino's Market is a corporation organized under the laws of the State of Kansas with its principal place of business in Overland Park, Johnson County, Kansas.

**ANSWER: Cosentino's denies the allegations of Paragraph 2 of the Complaint.**

3. Defendant Cosentino Group, Inc. d/b/a Cosentino's Market is an employer as defined and within the meaning of 42 U.S.C. § 2000e(b) of Title VII of the Civil Rights Act of 1964 as amended in 1991.

**ANSWER: Paragraph 3 of the Complaint is a legal conclusion that does not require a response. To the extent a response is required, Cosentino's admits the allegations in Paragraph 3 of the Complaint.**

4. Plaintiff is bringing these claims pursuant to Title VII of the Civil Rights Act of 1964, as amended in 1991, 42 U.S.C. § 2000 et seq.

**ANSWER: Paragraph 4 of the Complaint is a legal conclusion that does not require a response. To the extent a response is required, Cosentino's denies the allegations in Paragraph 4 of the Complaint for lack of information or knowledge.**

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**ANSWER: Paragraph 5 of the Complaint is a legal conclusion that does not require a response. To the extent a response is required, Cosentino's admits the allegations in Paragraph 5 of the Complaint, but denies that any conduct occurred giving rise to jurisdiction.**

6. Venue is proper because a substantial part of the events or omissions giving rise to the claims occurred in the District of Kansas within the meaning of 28 U.S.C. § 1391(b).

**ANSWER: Paragraph 6 of the Complaint is a legal conclusion that does not require a response. To the extent a response is required, Cosentino's admits that jurisdiction in this Court is appropriate, but denies that any conduct occurred giving rise to jurisdiction.**

7. Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) alleging that Defendant engaged in the discriminatory and/or retaliatory actions that are being raised in this lawsuit, or alternatively, the allegations in Plaintiff's lawsuit would have arisen from the investigation of Plaintiff's Charge of Discrimination.

**ANSWER: Paragraph 7 is a legal conclusion that does not require a response. To the extent a response is required, Cosentino's denies the allegations in Paragraph 7 of the Complaint for lack of information or knowledge.**

8. A Notice of Right to Sue has been issued by the EEOC, and this action is being brought within ninety (90) days from the issuance of such Notice of Right to Sue.

**ANSWER: Cosentino's admits the allegations of Paragraph 8 of the Complaint.**

9. Plaintiff has fulfilled all conditions precedent to the bringing of this claim and has duly exhausted all administrative procedures in accordance with the law prior to instituting this lawsuit.

**ANSWER: Cosentino's denies the allegations of Paragraph 9 as a legal conclusion that does not require a response. To the extent a response is required, Cosentino's denies the allegations in Paragraph 9 of the Complaint for lack of information or knowledge.**

## ALLEGATIONS COMMON TO ALL COUNTS

10. In approximately March 2012, Plaintiff began working for Defendant.

**ANSWER: Cosentino's admits the allegations in Paragraph 10 of the Complaint.**

11. Initially, Plaintiff worked as a Cashier at Defendant's location in Gardner, Kansas.

**ANSWER: Cosentino's admits the allegations in Paragraph 11 of the Complaint.**

12. Approximately six to eight months after her hire at Defendant's Gardner location, Plaintiff began working in Customer Service.

**ANSWER: Cosentino's admits the allegations in Paragraph 12 of the Complaint:**

13. In 2014 or 2015, Defendant promoted Plaintiff to Assistant Office Manager.

**ANSWER: Cosentino's admits the allegation in Paragraph 13 of the Complaint that Plaintiff was promoted to Assistant Office Manager during her employment with Cosentino's.**

14. In early 2017, Plaintiff accepted the position of Assistant Office Manager at Defendant's location on 119th Street in Overland Park, Kansas.

**ANSWER: Cosentino's admits the allegation in Paragraph 14 of the Complaint that Defendant accepted the position of Assistant Office Manager during her employment with Cosentino's. Cosentino's denies the remaining allegations of Paragraph 14 for lack of information or knowledge.**

15. When Defendant opened a store on 160th Street in Overland Park, Kansas in July 2017, Plaintiff began working at the 160th Street store as the Assistant Office Manager.

**ANSWER: Cosentino's admits the allegations in Paragraph 15 of the Complaint.**

16. In approximately January 2018, Defendant promoted Plaintiff to Office Manager.

**ANSWER: Cosentino's denies the allegations in Paragraph 16 of the Complaint.**

17. In June 2021, Plaintiff relinquished her manager role and began working in the store's bakery where she became a certified cake and wedding cake decorator.

**ANSWER: Cosentino's denies the allegations in Paragraph 17 of the Complaint.**

18. Plaintiff's direct supervisor in the bakery was a male Bakery Manager named Jessie Wealot (Wealot).

**ANSWER: Cosentino's admits the allegations in Paragraph 18 of the Complaint.**

19. In June 2023, an eighteen-year-old male named Jonathan "John" Martinez (Martinez) began working in the bakery as a cake decorator.

**ANSWER: Cosentino's admits the allegations in Paragraph 19 of the Complaint:**

20. At the time that Martinez was hired, Plaintiff was working in the bakery on Mondays, Tuesdays, and Fridays from 1:00-8:00 p.m., Wednesdays and Saturdays from 9:00-5:00 p.m., and Plaintiff was off work on Thursdays and Sundays.

**ANSWER: Cosentino's denies the allegations of Paragraph 20 of the Complaint for lack of information or knowledge.**

21. Martinez worked in the bakery from 8:00-4:00 p.m. each day, except on Thursdays and Sundays.

**ANSWER: Cosentino's denies the allegations of Paragraph 21 of the Complaint for lack of information or knowledge.**

22. During the entire time Plaintiff worked with Martinez in the bakery, he made inappropriate and unwelcome sexual comments/behavior, including, but not limited to:

a. Martinez stated that he wondered if a transgender person's parts smell like fish like women's parts do.

b. Martinez also stated that he "hooked up" with a girl and told Plaintiff and others that her "pussy always smells like fish."

c. Martinez shared that his friend leaves his work at Hy-Vee on his lunch break to "hook up" with girls.

d. Martinez then commented that his friend "got a really bad blow job because

this girl used too much teeth."

e. On multiple occasions Martinez would tell Plaintiff and others that he could have sex forever.

f. Martinez frequently talked about working out at the gym and would describe the women he saw at the gym, including commenting on each woman's breasts, butt, or how "hot" some of the women looked.

g. Martinez also told Plaintiff that he thought Alyssia Juarez (Juarez), one of the part-time decorators in the bakery, was really "hot."

h. Martinez also told Plaintiff and others that he was in recovery from an eating disorder.

i. Martinez would then look at Plaintiff's body and comment that she could lose weight, i.e. about 20 pounds, if she would eat organic and/or workout.

j. Martinez told Plaintiff that he did not date "fat chicks."

k. Plaintiff also noticed that Martinez would stand too close and/or brush his body and/or touch some of the female employees in the bakery. As an example, Plaintiff witnessed Martinez intentionally brush his arm against Juarez's leg when he bent down to grab a bucket that was underneath the table where he was working

**ANSWER: Cosentino's denies the allegations in Paragraph 22, subparagraphs a-k, of the Complaint for lack of information or knowledge.**

25. In response Martinez's comments, Plaintiff told him that his comments were inappropriate, that she did not want to hear them, and she would also tell him not to talk about women's bodies in a sexual manner.

**ANSWER:[*] Cosentino's denies the allegations in paragraph 25 of the Complaint for lack of information or knowledge.**

[*] Cosentino's makes note that paragraphs 23 and 24 of Plaintiff's Complaint are missing, and as such Cosentino's does not provide a response in connection with such paragraphs.

26. A number of the sexually inappropriate comments made by Martinez were said in the presence of Plaintiff's manager Wealot, but Plaintiff would also report what Martinez would say to Wealot.

**<u>ANSWER</u>: Cosentino's denies the allegations in Paragraph 26 of the Complaint for lack of information or knowledge.**

27. Despite Plaintiff's reports to Wealot and despite Wealot hearing Martinez make these sexually inappropriate comments at work, Wealot took no action.

**<u>ANSWER</u>: Cosentino's denies the allegations in Paragraph 27 of the Complaint.**

28. Rather, Wealot started sharing with Plaintiff the comments he heard Martinez make at work.

**<u>ANSWER</u>: Cosentino's denies the allegations in Paragraph 28 of the Complaint.**

29. For instance, on or about July 25, 2023, Wealot told Plaintiff that Martinez said something really bad in front of Deja (a female baker), and he believed that Deja was upset by Martinez's comment.

**<u>ANSWER</u>: Cosentino's denies the allegations in Paragraph 29 of the Complaint for lack of information or knowledge.**

30. When Plaintiff asked Wealot what he heard Martinez say, he said that Martinez was filling a bag of cream and said "it sounded like a pussy flapping."

**<u>ANSWER</u>: Cosentino's denies the allegations in Paragraph 30 of the Complaint for lack of information or knowledge.**

31. Plaintiff told Wealot that he needed to tell Martinez to stop making these comments at work because it was making her and others in the bakery uncomfortable and unhappy.

**<u>ANSWER</u>: Cosentino's denies the allegations in Paragraph 31 of the Complaint for lack of information or knowledge.**

32. Wealot replied, "Really?" Plaintiff told him yes. To Plaintiff's knowledge, he did

not take any action to stop Martinez from making these comments.

**<u>ANSWER</u>: Cosentino's denies the allegations in Paragraph 32 of the Complaint.**

33. That same day, i.e. on or about July 25, 2023, Plaintiff reported what Wealot told her about Martinez's comment about the bag of cream to the Assistant Store Manager Keith Malloy (Malloy).

**<u>ANSWER</u>: Cosentino's denies the allegations in Paragraph 33 of the Complaint for lack of information or knowledge:**

34. Plaintiff also reported to Malloy the other offensive and sexual comments Martinez had been making at work and that Plaintiff wanted to remain anonymous because she was worried Martinez would retaliate against her for reporting him.

**<u>ANSWER</u>: Cosentino's denies the allegations in Paragraph 34 of the Complaint for lack of information or knowledge.**

35. Plaintiff witnessed Malloy take notes about what she reported to him.

**<u>ANSWER</u>: Cosentino's denies the allegations in Paragraph 35 of the Complaint for lack of information or knowledge.**

36. In response, Malloy told Plaintiff he would take care of it.

**<u>ANSWER</u>: Cosentino's denies the allegations in Paragraph 36 of the Complaint for lack of information or knowledge.**

37. After Plaintiff's report to Malloy, Martinez continued to make inappropriate and unwelcome sexual comments at work.

**<u>ANSWER</u>: Cosentino's denies the allegations in Paragraph 37 of the Complaint.**

38. After Plaintiff's report to Malloy, she also noticed that Martinez and others in the bakery seemed upset with her.

**<u>ANSWER</u>: Cosentino's denies the allegations in Paragraph 38 of the Complaint for lack of information or knowledge.**

39. Plaintiff asked Wealot about it, and he told Plaintiff that Martinez had put in his notice because someone reported him for inappropriate behavior and that Martinez knows who

reported him.

**<u>ANSWER</u>: Cosentino's denies the allegations in Paragraph 39 of the Complaint for lack of information or knowledge.**

40. Wealot made it clear that Martinez and he both knew Plaintiff was the one who reported Martinez and that Plaintiff was the reason Martinez was leaving.

**<u>ANSWER</u>: Cosentino's denies the allegations in Paragraph 40 of the Complaint for lack of information or knowledge.**

41. Plaintiff did not believe Martinez intended to leave, as Martinez never told Plaintiff he was leaving and since he had been talking about leaving his employment with Defendants since he first started as he also worked for another grocery store.

**<u>ANSWER</u>: Cosentino's denies the allegations in Paragraph 41 of the Complaint for lack of information or knowledge.**

42. The week of August 7, 2023, Plaintiff's co-workers told her that Martinez knew that she was the one who reported him.

**<u>ANSWER</u>: Cosentino's denies the allegations in Paragraph 42 of the Complaint for lack of information or knowledge.**

43. That same week, Martinez started mocking Plaintiff and answering others' questions in an imitation of Plaintiff's voice.

**<u>ANSWER</u>: Cosentino's denies the allegations in Paragraph 43 of the Complaint.**

44. Wealot witnessed Martinez mocking Plaintiff, but he did not stop Martinez's behavior towards her.

**<u>ANSWER</u>: Cosentino's denies the allegations in Paragraph 44 of the Complaint.**

45. Martinez continued to mock Plaintiff up through the end of his employment.

**<u>ANSWER</u>: Cosentino's denies the allegations in Paragraph 45 of the Complaint.**

46. The week of August 14, 2023, one of the female employees in the bakery named Georgia told Plaintiff that Martinez was "plotting his revenge" against Plaintiff.

**ANSWER: Cosentino's denies the allegations in Paragraph 46 of the Complaint for lack of information or knowledge.**

47. On or about August 18, 2023, Plaintiff reported to Malloy that Martinez knew that she had reported him and that Georgia told Plaintiff that he was plotting his revenge.

**ANSWER: Cosentino's denies the allegations in Paragraph 47 of the Complaint for lack of information or knowledge.**

48. During this conversation, Malloy told Plaintiff that he had never spoken to Martinez after her complaint and had never reported Martinez's behavior to corporate.

**ANSWER: Cosentino's denies the allegations in Paragraph 48 of the Complaint for lack of information or knowledge.**

49. After hearing that Plaintiff's previous reports to management had all been ignored since management failed to stop Martinez from making inappropriate and unwelcome sexual comments, Plaintiff felt she had no choice but to leave her employment with Cosentino's.

**ANSWER: Cosentino's denies the allegations in Paragraph 49 of the Complaint.**

50. Plaintiff did not feel comfortable working in an environment where this kind of harassment and retaliation was ignored by management.

**ANSWER: Cosentino's denies the allegations in Paragraph 50 of the Complaint.**

51. Moreover, Plaintiff felt uncomfortable working around Martinez that she could not look at him and did not want to speak with him or have any interaction with him.

**ANSWER: Cosentino's denies the allegations in Paragraph 51 of the Complaint.**

52. Defendant, through its illegal discriminatory acts, made Plaintiff's conditions so difficult and/or intolerable that Plaintiff and any other reasonable person in Plaintiff's position would have felt compelled to resign.

**ANSWER: Cosentino's denies the allegation in Paragraph 52 that it committed or performed any illegal acts, discriminatory or otherwise. Cosentino's further denies the allegation that it made conditions difficult and/or intolerable in any manner. Cosentino's further denies the allegation that Plaintiff and any other reasonable person in Plaintiff's position would have felt compelled to resign for lack of information or knowledge.**

**Cosentino's denies any remaining allegations of Paragraph 52.**

53. Plaintiff was constructively discharged.

**ANSWER: Cosentino's denies the allegations of Paragraph 53 of the Complaint.**

54. Plaintiff's last day of work was August 18, 2023.

**ANSWER: Cosentino's admits the allegations of Paragraph 54 of the Complaint.**

55. As of Plaintiff's last day of work, Martinez was still working in the bakery.

**ANSWER: Cosentino's admits the allegations of Paragraph 55 of the Complaint.**

56. On August 21, 2023, Plaintiff contacted corporate Human Resources and reported Martinez's unwelcome and sexual comments/behavior and management's failure to take any action to stop the conduct.

**ANSWER: With regards to the allegation of Paragraph 56, Cosentino's admits that on August 21, 2023, Plaintiff contacted corporate Human Resources for the first time, and made a report regarding Martinez. Plaintiff denies the remaining allegations of Paragraph 56 of the Complaint.**

57. At the request of a female human resources employee named Tracy, Plaintiff provided her a written statement, but Plaintiff did not hear back from anyone after making her report.

**ANSWER: Cosentino's admits the allegations of Paragraph 57 of the Complaint that Plaintiff sent a written statement to Cosentino's. Plaintiff denies the remaining allegations of Paragraph 57 of the Complaint for lack of information or knowledge.**

**COUNT I – SEXUAL HARASSMENT IN VIOLATION OF TITLE VII**

58. Plaintiff hereby incorporates by reference into Count I all allegations contained in all preceding paragraphs herein.

**ANSWER: In response to the allegations of Paragraph 58, Cosentino's incorporates by reference each paragraph of this Answer as if fully set forth herein.**

59. As described above and during the course of Plaintiff's employment, Defendant's representatives, acting within the scope and course of employment, subjected Plaintiff to a hostile

and offensive work environment based upon her sex, female, as a result of unwelcome comments and actions by Martinez, a male co-worker, which constituted a continuing pattern of unwelcome harassment, which she found and which a reasonable person would find to be offensive and which altered a term, condition or privilege of Plaintiff's employment in violation of Title VII of the Civil Rights Act of 1964, as amended in 1991, 42 U.S.C. § 2000 et seq.

**ANSWER: Cosentino's denies the allegations of Paragraph 59 of the Complaint as a legal conclusion that does not require a response. To the extent a response is required, Cosentino's denies the allegations of Paragraph 59.**

60. Defendant's conduct was sufficiently severe and/or pervasive to alter the terms, conditions, or privileges of Plaintiff's employment.

**ANSWER: Cosentino's denies the allegations of Paragraph 60 of the Complaint as a legal conclusion that does not require a response. To the extent a response is required, Cosentino's denies the allegations of Paragraph 60.**

61. Defendant knew or should have known about the hostile and offensive work environment, but Defendant failed to take prompt or appropriate remedial or corrective action in response to the hostile and offensive work environment.

**ANSWER: Cosentino's denies the allegation in Paragraph 61 of the Complaint that there existed a hostile and offensive work environment. Cosentino's further denies the remaining allegations of Paragraph 61.**

62. Defendant failed to make good faith efforts to enforce their policies to prevent sexual harassment against their employees, including Plaintiff.

**ANSWER: Cosentino's denies the allegations of Paragraph 62 of the Complaint**.

63. All actions or inactions of or by Defendant occurred by and through their agents, servants, or employees acting within the course and scope of their employment, as set forth herein.

**ANSWER: Cosentino's denies the allegations of Paragraph 63 of the Complaint as a legal conclusion that does not require a response. To the extent a response is required, Cosentino's denies the allegations of Paragraph 63.**

64. As a direct and proximate result of the unlawful conduct of Defendant as set forth

herein, Plaintiff has suffered damages including emotional distress, pain and suffering, past and future lost wages and benefits, a detrimental job record, career damage and diminished career potential, mental distress in the form of embarrassment, degradation, humiliation, anxiety, loss of enjoyment of life, loss of sleep, and other nonpecuniary losses. Plaintiff is also entitled to other appropriate equitable relief.

**ANSWER: Cosentino's denies the allegations of Paragraph 64 of the Complaint as a legal conclusion that does not require a response. To the extent a response is required, Cosentino's denies the allegations of Paragraph 64 for lack of information or knowledge.**

65. The conduct of Defendant was intentional, malicious, and/or outrageous and evidenced an evil motive or conscious disregard for the rights of Plaintiff and others similarly situated, entitling Plaintiff to an award of punitive damages.

**ANSWER: Cosentino's denies the allegations of Paragraph 65 of the Complaint as a legal conclusion that does not require a response. To the extent a response is required, Cosentino's denies the allegations of Paragraph 65.**

66. Plaintiff is entitled to recover all her costs, expenses, expert witness fees, and attorneys' fees incurred in this matter as well as other appropriate equitable relief.

**ANSWER: Cosentino's denies the allegations of Paragraph 66 of the Complaint as a legal conclusion that does not require a response. To the extent a response is required, Cosentino's denies the allegations of Paragraph 66.**

**COUNT II- RETALIATION IN VIOLATION OF TITLE VII**

67. Plaintiff hereby incorporates by reference into Count II all allegations contained in all preceding paragraphs herein.

**ANSWER: In response to the allegations of Paragraph 67, Cosentino's incorporates by reference each paragraph of this Answer as if fully set forth herein.**

68. Plaintiff engaged in protected activity by, and including without limitation, reporting the sexual harassment and/or discriminatory conduct based on sex to management and/or human resources employees of Defendant.

**ANSWER: Cosentino's denies the allegations of Paragraph 68 of the Complaint as a**

**legal conclusion that does not require a response. To the extent a response is required, Cosentino's denies the remaining allegations of Paragraph 68 for lack of information or knowledge.**

69. As a result of and/or in retaliation for engaging in one or more protected activities described herein, Defendant retaliated against Plaintiff, by subjecting Plaintiff to additional acts of harassment and by constructively discharging Plaintiff in violation of Title VII of the Civil Rights Act of 1964, as amended in 1991, 42 U.S.C. § 2000 et seq.

**ANSWER: Cosentino's denies the allegations of Paragraph 69 of the Complaint as a legal conclusion that does not require a response. To the extent a response is required, Cosentino's denies the allegations of Paragraph 69.**

70. All actions or inactions of or by Defendant occurred by and through their agents, servants, or employees acting within the course and scope of their employment, as set forth herein.

**ANSWER: Cosentino's denies the allegations of Paragraph 70 of the Complaint as a legal conclusion that does not require a response. To the extent a response is required, Cosentino's denies the allegations of Paragraph 70 of the Complaint for lack of information or knowledge.**

71. As a direct and proximate result of the unlawful conduct of Defendant as set forth herein, Plaintiff has suffered damages including emotional distress, pain and suffering, past and future lost wages and benefits, a detrimental job record, career damage and diminished career potential, mental distress in the form of embarrassment, degradation, humiliation, anxiety, loss of enjoyment of life, loss of sleep, and other nonpecuniary losses. Plaintiff is also entitled to other appropriate equitable relief.

**ANSWER: Cosentino's denies the allegations of Paragraph 71 of the Complaint as a legal conclusion that does not require a response. To the extent a response is required, Cosentino's denies the allegations of Paragraph 71 for a lack of information or knowledge.**

72. The conduct of Defendant was intentional, malicious, and/or outrageous and evidenced an evil motive or conscious disregard for the rights of Plaintiff and others similarly situated, entitling Plaintiff to an award of punitive damages.

**ANSWER: Cosentino's denies the allegations of Paragraph 72 of the Complaint as a legal conclusion that does not require a response. To the extent a response is required, Cosentino's denies the allegations of Paragraph 72.**

73. Plaintiff is entitled to recover all her costs, expenses, expert witness fees, and attorneys' fees incurred in this matter as well as other appropriate equitable relief.

**ANSWER: Cosentino's denies the allegations of Paragraph 73 of the Complaint as a legal conclusion that does not require a response. To the extent a response is required, Cosentino's denies the allegations of Paragraph 73**

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial on all Counts and all allegations contained herein.

**ANSWER:** Without consenting to the same, Cosentino's admits that Plaintiff has made a request for a jury trial.

## REQUEST FOR PLACE OF TRIAL

Plaintiff hereby requests that the trial of this matter take place in Kansas City, Kansas.

**ANSWER:** Without consenting to the same, Cosentino's admits that Plaintiff has made a request that the trial of this smatter take place in Kansas City, Kansas.

## COSENTINO'S DEFENSES AND AFFIRMATIVE DEFENSES TO ALL COUNTS

1. Any claim alleged by Plaintiff in her Complaint that is not specifically admitted in this answer is hereby denied.

2. Plaintiff's Complaint, in whole or in part, fails to state a claim upon which relief may be granted. Alternatively, Plaintiff should provide a more definite statement of her claims.

3. Plaintiff has failed to mitigate her damages, if any.

4. Any and all claims of discharge or constructive discharge should be dismissed because Plaintiff's contacted Defendant's human recourse department for the first time after giving notice that she was ending her employment with Defendant and that she had secured a new job and she never returned to work after giving this notice.

5. Defendant took no adverse employment action against Plaintiff at any time and Plaintiff failed to allow Defendant time to cure the alleged actions of her co-worker.

6. Defendant denies it engaged in any wrongful conduct and denies that Plaintiff is entitled to any legal or equitable relief.

7. Plaintiff's Complaint contains no facts to support the allegations that Defendant discriminated and/or retaliated against Plaintiff for making an alleged complaint and/or report. Thus, Plaintiff's Complaint fails, in whole or in part, to state a claim upon which relief can be granted against Defendant.

8. Defendant's claims for retaliation and discrimination should be dismissed because Defendant exercised reasonable care to prevent and correct promptly any sexually harassing behavior and Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the Defendant to avoid harm otherwise.

9. Plaintiff's claims are barred by the equitable doctrines of laches, waiver, and estoppel.

10. Plaintiff's claims are barred by the doctrine of unclean hands.

11. Plaintiff has failed to exhaust administrative remedies.

12. Defendant's actions were at all times lawful and justified.

13. Plaintiff's claims are barred because Defendant cannot be held vicariously liable because a) Defendant exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and b) plaintiff unreasonably failed to take advantage of any preventative or cooperative opportunities provided by the employer or to avoid harm otherwise. *Schmidt v. Medicalodges, Inc.*, 492 F.Supp.2d 1302, 1307 (D. Kan. 2007) (*quoting Faragher v. City of Boca Raton*, 524 U.S. at 775, 807 S.Ct. 2275).

14. Plaintiff's claims for punitive damages violates the United States Constitution and the Constitution of the State of Kansas.

15. Defendant made good-faith efforts to comply with the requirements of applicable law by establishing, communicating, and enforcing policies prohibiting discrimination and retaliation, by educating its employees on such policies, conducting training on such policies, and enforcing such policies, and therefore Defendant may not be held liable for punitive damages. Pursuant to *Kolstad v. American Dental Association*, 119 S. Ct. 2118 (1999), Defendant cannot be held vicariously liable for punitive damages based on the alleged discriminatory or retaliatory employment decisions of managers or co-workers, as any unlawful decisions were contrary to its good faith efforts, instructions, and publications to comply with all applicable civil rights statutes.

16. Defendant states that the claim of Plaintiff for punitive damages cannot be sustained because an award of punitive damages under Kansas law by a jury would violate Defendant's due process and equal protection rights guaranteed by the Fourteenth Amendment to the United States Constitution and by Kansas Constitutional provisions providing for due process and equal protection and would be improper under the common law and public policies of the State of Kansas for the reason that any such jury:

a. Would not be provided standards of sufficient clarity for determining the appropriateness and the appropriate size of an award of punitive damages;

b. Would not be adequately instructed on the limits of punitive damages imposed by the applicable principals of deterrence and punishment;

c. Would not expressly be prohibited from awarding damages, or determining the amount of an award of punitive damages in whole or in part, on the basis of invidiously discriminatory characteristics, including the residence or wealth of Defendant;

d. Would be permitted to award punitive damages under standards for determining the liability for punitive damages that are vague and arbitrary and do not define with sufficient clarity the conduct or mental state that makes an award for punitive damages permissible; and

e. Could render a judgment or award that would not be subject to trial court and appellate judicial review for reasonableness on the basis of objective standards.

17. Furthermore, Plaintiff's claim for punitive damages violates Defendant's right secured by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, in that the claim for punitive damages is for the purpose of punishing Defendant and is tantamount to imposition of a criminal finding based upon conduct and a mental state which is not defined with sufficient precision or clarity to notify Defendant in advance of the conduct which will give rise to imposition of punishment in the form of punitive damages, and the amount of the penalty that may be imposed is indeterminate in that there are no definite standards governing the discretion of the fact finder in determining the severity of the punishment to be inflicted, all of which violate Defendant's rights to procedural and substantive due process secured by both the federal and state Constitutions; the claim for punitive damages constitutes a request for an excessive fine and would therefore deprive Defendant of the guarantee secured by the Federal and State Constitutions that excessive fines shall not be imposed; the punitive damage claim discriminates against Defendant on the basis of wealth in that different amounts can be awarded against different Defendant for the same act based only upon the difference in wealth and further lack the standards for imposing or awarding punitive damages allows the fact finder to impose punishment on one Defendant while refusing to impose punishment on another Defendant for engaging in the same or similar conduct and therefore is irrational, arbitrary and capricious and constitutes a deprivation of Defendant's rights to the equal protection of the laws as secured by the federal and state constitutions; the claim for punitive damages amounts to an ex post facto law and a punishment which is retrospective in operation; it impairs Defendant's rights to contract and to access the courts and further constitutes an uncertain remedy, all in contravention of rights secured for Defendant by the federal and state constitutions

18. Defendant reserves the right to assert such other affirmative defenses which are not now known, but which may become apparent through discovery.

Respectfully submitted,

s/ Rodney A. Ames
Rodney A. Ames KS Bar No. 79184
MO Bar No. 44865
Withers, Brant, Igoe & Mullennix, P.C.
Two South Main
Liberty, Missouri 64068
Telephone: (816) 781-4788 – Phone
Fax: (816) 792-2807 – Facsimile
Email: rames@withersbrant.com
Attorney for Defendant Cosentino Group, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of May 2024, the forgoing was electronically filed using the Electronic Filing System which will send notice of filing to all registered attorneys of record, to wit:

Kristi L. Kingston
12920 Metcalf Avenue, Suite 180
P.O. Box 25843
Overland Park, KS 66225
Ph: (913) 286-5200
Fax: (913) 286-5201
Email: kristi@elgkc.com